## DALTON v. BILBO, Trustee.

No. 16517. Opinion Filed July 5, 1927.

(Syllabus.)

**1. Replevin—Sufficiency of Allegation of Ownership—Action by Trustee.**

A petition in replevin which alleges that plaintiff was trustee for certain persons; that as such trustee he had in his possession the property sued for, and that the property was situate on a lease owned by his beneficiaries, sufficiently avers ownership as against a general demurrer.

**2. Property—Possession as Evidence of Ownership of Personalty.**

Possession of personal property is prima facie proof of ownership, and is presumptive evidence that the possession is rightful. Possession may, indeed, be considered the primitive proof of title and the natural foundation of right.

**3. Evidence—Opinion Evidence—Value of Used Oil Well Casing.**

A witness is not incompetent to testify as to the value of used oil well casing simply because he does not know the market value, especially where it is shown that he had been engaged in the vicinity for about two years in the drilling of wells for oil and gas, and during that time had bought oil well casing of like character. The competency of the witness is a question for the court, while the value of his testimony is for the jury to determine.

**4. Replevin—Rule of Confusion of Goods Applicable to Second-Hand Oil Well Casing.**

The rule of confusion of goods in replevin (that where the goods are mixed and are of the same nature and value, as in the case of oats, corn, or wheat, each party may claim his aliquot part) applies to second-hand casing not bearing any brands, ownership marks, or other distinguishing characteristics, when mingled with other second-hand casing of like size and character.

**5. Appeal and Error—Harmless Error—Instructions.**

Although an instruction given may misstate the law, if others are given which, when taken together with the improper one, make it apparent that the jury was not misled thereby, the same will not constitute reversible error.

**6. Appeal and Error—Objection to Verdict in Replevin Fixing Gross Value of Property—Failure to Ask Direction of Jury to Fix Value of Separate Items.**

Defendant, having failed to request an instruction directing the jury to fix the value of such separate items of property as they might award to the plaintiff, cannot complain if the jury return a verdict fixing a gross value upon all the property awarded to plaintiff.

**7. Replevin—Sufficiency of Verdict for Property "Sued for."**

A verdict which awards to plaintiff the property "sued for" sufficiently describes the property, since reference to the petition will disclose the property "sued for."

Commissioners' Opinion, Division No. 1.

Error from District Court, Marshall County; Porter Newman, Judge.

Action in replevin by George W. Bilbo, trustee for the United Eight Oil Trust, against B. F. Dalton. From a verdict and judgment for plaintiff, defendant appeals. Affirmed.

Don Welch, for plaintiff in error.

McClendon & Hatcher, for defendant in error.

MONK, C. In the court below, George W. Bilbo, trustee for the United Eight Oil Trust, was plaintiff, is defendant in error here, and will hereinafter be referred to as plaintiff; while B. F. Dalton was defendant below, is plaintiff in error here, and will hereinafter be referred to as defendant.

This was an action in replevin instituted in the district court of Marshall county on June 25, 1924, by the filing of a petition which, exclusive of caption and signature, is as follows:

"Comes now the plaintiff and respectfully shows to the court that he is trustee for the United Eight Oil Trust; that as such trustee he has been for the past three years operating and prospecting for oil in Marshall county; that he owns several leases in Marshall county, one of which is near Aylesworth; and that as such trustee he had in his possession ten joints of second hand 10-inch oil well casing and 416 feet of second-hand 8-inch oil well casing; that the casing was on a lease owned by the United Eight Oil Trust near Aylesworth Okla.

"2. That B. F. Dalton, the defendant herein, fraudulently and stealthily with the felonious intent to deprive George W. Bilbo, as trustee of the United Eight Oil Trust, of the uses and benefit of said casing, entered upon the leased premises of plaintiff and took ten joints of 10-inch second-hand oil well casing and 416 feet of 8-inch second-hand oil well casing, which he now unlawfully and wrongfully detains from this plaintiff without any right or title thereto except such as has been feloniously acquired by the defendant.

"3. Plaintiff alleges that he is entitled

to the immediate possession of said oil well casing.

"4. Plaintiff alleges that by reason of the wrongful taking of the above described well casing by the defendant B. F. Dalton, that he has been damaged in the sum of $250, the cost of bringing and prosecuting this suit and the necessary expense in having the property returned to the premises of plaintiff.

"Wherefore, plaintiff prays for judgment for the possession of said ten joints or 200 feet of second-hand 10-inch oil well casing and 416 feet of 8-inch second-hand oil well casing, or in lieu thereof $650, the value of said casing and for the further sum of $250 damages and for the costs of this action."

A general demurrer to the petition was filed and overruled. The defendant then answered by general denial, and the cause came on for trial on its merits. The defendant thereupon objected to the introduction of evidence, for the reason that the petition did not state a cause of action. This objection was overruled. After the evidence was in, the court orally instructed the jury as follows:

"Gentlemen of the Jury:

"In this case the plaintiff sues for the possession of oil well casing, or in the alternative, for its value.

"To these allegations the defendant has entered a general denial and that puts the burden of proof upon the plaintiff to prove his case by a fair preponderance of the evidence.

"You are therefore instructed that if you find that he has made such proof, then it will be your duty to find for the plaintiff; if you find that the testimony is evenly balanced, or the plaintiff has failed to make out his case by a preponderance of the evidence then you should find for the defendant.

"You are further instructed that if you find from a fair preponderance of the evidence that the plaintiff is the owner of the casing sued for, or any of it, then it will be your duty to find a verdict for the plaintiff for such of the casing as he is the owner of, and fix a value on it.

"If you find for the plaintiff for the casing sued for, the fact that it might be mexed (sic) and mingled with other casing should not mitigate (sic) against his right to recover for such of the casing as he lost, if you further find from a fair preponderance of the evidence that the defendant in moving the casing from the well to where it is now located at Oakland has indiscriminately (sic) mixed the casing of the plaintiff with other casing so that it cannot be identified.

"You are further instructed that the plaintiff must recover in this action upon the strength of his own title to the property in controversy and not by reason of the fact that the defendant has failed to offer any proof of title whatsoever.

"You are further instructed that the testimony in this case shows that the defendant, Dalton, was representing an oil company and the suit is brought against him in his name. In this connection you are instructed that that should not mitigate (sic) against him, as he had a right to come into this court as the agent of these people and defend the title to this property just as though he was the owner of it.

"You are the sole and exclusive judges of the credibility of the witnesses, of the weight and value you will give to their testimony, and of the facts proven, but for the law you must look to these instructions, considering them as a whole, and be governed thereby.

"Nine or more of your number may return a verdict in this case; if all concur in the verdict, have your foreman sign the same as such; if less than the whole number concur therein, each juror concurring therein must sign the same. Forms of verdicts, which you may use if you desire, will be handed you at the conclusion of the arguments. When you have reached a verdict, return it into open court in your presence."

The defendant requested one instruction, which was by the court refused. The instruction is as follows:

"Mr. Welch: The defendant requests the court to instruct the jury that if they find for the plaintiff as to any portion of the personal property involved in this lawsuit, they should designate in their verdict the particular property as to which they find for the plaintiff."

After argument of counsel, the jury returned the following verdict:

"We, the jury, lawfully empaneled and sworn in the above entitled cause, upon our oaths do find from the law and the evidence in favor of the plaintiff for the oil well casing sued for, and find the value of same to be $514.35."

Upon the return of the verdict, the defendant objected to the filing thereof. That portion of the record which relates to this objection is as follows:

"Jury retires to consider cause and return into open court with verdict for the plaintiff, verdict read in open court by the clerk and the defendant objects to the filing of said verdict for the reason that the same is vague, indefinite, and uncertain and does not sufficiently describe the property as to which the verdict for plaintiff is found, objections overruled by the court and ver-

dict filed by the clerk, defendant excepts, exceptions allowed."

The verdict was filed and judgment rendered thereon.

The defendant then filed his motion for judgment notwithstanding the verdict, which was overruled; and thereafter filed his motion for a new trial, which was overruled, and has now perfected his appeal to this court.

The petition in error presents, and defendant argues, ten assignments of error, which will be considered in the order in which they appear in defendant's brief.

Defendant first contends that the court erred in overruling the demurrer to plaintiff's petition, and in overruling the defendant's objection to the introduction of evidence thereunder, insisting that the petition does not sufficiently allege ownership. The petition is set out in full in the statement of facts herein, and it appears therefrom that the plaintiff alleged that he was trustee for the United Eight Oil Trust; that "as such trustee he had in his possession" the oil well casing sued for, and that the casing was on a lease owned by the United Eight Oil Trust. While we do not commend this as an example of proper pleading of ownership in replevin, yet we think the allegations taken with their natural and reasonable intendments and implications are sufficient, as against a general demurrer, to plead a special ownership in the plaintiff.

Cobbey in his Work on Replevin (2d Ed.) sec. 1017, says:

"Possession of personal property is prima facie proof of ownership, and is presumptive evidence that the possession is rightful. Possession may indeed be considered the primitive proof of title and the natural foundation of right."

Defendant next insists that the court erred in admitting, over objection, testimony of value from a witness who, defendant contends, was not qualified to testify as to value. The defendant urges that the preliminary examination of the witness disclosed that the witness did not know the market value of the property. The testimony of the witness is not clear, but it is susceptible of the interpretation that he did know the market value. However, this court in the case of Fire Ass'n of Pa. v. Farmers' Gin Co., 39 Okla. 162, 134 Pac. 443, said:

"Witnesses are not incompetent to testify as to the value of a ginhouse and machinery used therein simply because they do not know the market value of the same, especially where it is shown that they live in the same neighborhood, are well acquainted with both house and machinery, have worked therein, have had several years' experience in handling such machinery, and have a good general knowledge of values, and claim to know the cash value of the particular building and machinery. Their competency is a question for the court, while the value of their testimony is for the jury to determine."

In the instant case, the witness testified that he had been engaged in drilling wells in the community for about two years, and that he had had experience in purchasing oil well casing. We believe that his testimony was competent; its competency was for the court; its weight was for the jury.

The defendant next complains of the ruling of the court in sustaining objections to questions asked the plaintiff on cross examination relating to various business transactions had by the plaintiff with persons from whom he claimed to have purchased the oil well casing in question, and insists that because the plaintiff was permitted to introduce checks given to such persons for the purchase of said casing, he should have been permitted to inquire as to these other transactions as giving rise to an inference that the checks were not given for casing.

The defendant, however, in the questions excluded, did not limit the time of the transactions to a period near the date of the checks, and we believe the evidence was properly excluded as being not limited in time, too remote, and as having no probative value.

Defendant also complains of the exclusion of evidence sought to be elicited on cross-examination of the plaintiff relative to the expiration of the lease upon which the casing was situated. He insists that because of his view that the plaintiff's petition did not sufficiently allege ownership, that the plaintiff might be endeavoring to maintain his action on the theory that the defendant was a trespasser upon his property, and that therefore the necessity for the allegation of ownership did not exist. However, since we hold that the trial court was correct in ruling that the petition did sufficiently allege ownership, this evidence was not relevant, and therefore properly excluded.

Defendant next contends that the court erred in giving the following instruction:

"If you find for the plaintiff for the casing sued for, the fact that it might be mixed and mingled with other casing, should not mitigate against his right to recover for

such of the casing as he lost, if you further find from a fair preponderance of the evidence that the defendant in moving the casing from the well to where it is now located at Oakland has indiscriminately mixed the casing of the plaintiff with other casing so that it can not be identified."

This instruction, while open to some criticism as to form and language (the court undoubtedly intended "mixed" for "mexed," "militate" for "mitigate," and "indiscriminately" for "indiscrimately"), substantially states the law applicable to the confusion of goods in replevin. It appears from the testimony that some of the casing was susceptible of identification. But other factors which defendant contends would render identification possible ("some of the joints were short and some long"; "some were threaded one way and some another"; "some was rotten and some was good") were not peculiar to plaintiff's casing. There is nothing in the record to indicate that the second-hand casing of the defendant, with which the casing in controversy had been mingled, did not possess some or all of the above characteristics.

Cobbey in his Work on Replevin (2d Ed.) p. 206, says:

."But where the goods are mixed and are of the same nature and value, although not capable of an actual separation by identifying each particle, yet if a division can be made of equal value, as in the case of oats, corn or wheat, each party may claim his aliquot part."

We believe, therefore, that the casing in controversy did not have such distinguishing characteristics as to take it out of the rule relating to confusion of goods with other goods of like character, and that the instruction was properly given.

The defendant next contends that the court erred in giving the following instruction:

"You are further instructed that the plaintiff must recover in this action upon the strength of his own title to the property in controversy and not by reason of the fact that the defendant has failed to offer any proof of title whatsoever."

While this instruction, taken alone, because of its inapt language might have been erroneous, yet, considering it in conjunction with the entire charge, we do not believe the jury was misled thereby.

This court in the case of Snyder v. Stribling, 18 Okla. 168, 89 Pac. 222, said:

"Although an instruction given may misstate the law, if others are given which when taken together with the improper one make it apparent that the jury was not misled thereby, the same will not constitute reversible error."

The court, in the body of the opinion, said:

"* * * The jury are instructed that the contract of October 1st, 1900, must govern as to the count of the unbranded cattle, unless you find that said contract is void for having been made without consideration, duress or undue influence.

"This instruction is couched in very unfortunate language; the learned trial judge is made to say something that he did not intend. It is apparent that he intended to charge the jury, that, unless the contract of October 1, 1900, was void for having been made without consideration or under duress or undue influence, that it must govern as to the count of the unbranded cattle; but he is technically made to say that a contract made without duress or undue influence is void. The instruction is subject to the further criticism that a contract made under duress or undue influence is treated as void, whereas such a contract is only voidable. Standing alone the instruction is objectionable, but when construed in connection with instruction 8, just preceding it, it is clear that no prejudice could have resulted. In instruction 8 the jury are told that if Stribling, after October 1st, ratified the contract of that date or recognized the validity thereof in the subsequent count of the cattle or in the authorization of payment of money to his creditors or in the receipt of money by him thereunder, then any duress or undue influence was waived, and the contract could not be avoided on account thereof. This cured the mere verbal error in the other instruction, and when the two were read together, as they must be, and considered in the light of the whole record, it is apparent that no injustice could have resulted from the defects in instruction No. 9."

Taken alone, the instruction complained of would seem to instruct the jury that the defendant had failed to offer any proof of title whatsoever, and the jury might take this instruction to mean that they must disregard whatever testimony defendant had adduced on the question of title. It would thus be an invasion of the province of the jury on the weight of the evidence.

However, considering it in connection with the court's general instruction on the burden of proof and the preponderance of the evidence, and particularly that portion which instructs that if the testimony be evenly balanced or the plaintiff fails to preponderate, then the finding should be for

the defendant, we do not believe that this instruction misled the jury.

It is clear that the court did not use apt language. It was undoubtedly the intention of the court to instruct that in replevin the plaintiff must recover upon the strength of his own title, even though the defendant might not offer any proof of title whatsoever. The court did not intend to instruct the jury that the defendant had made no proof of title, for in the general instructions the jury is charged on the theory of evenly balanced proof. Title was the only controverted issue for the jury in this case, and the instruction on evenly balanced proof presupposes the introduction of some evidence of title by the defendant. We do not believe that prejudicial error resulted from giving this instruction.

The defendant next complains of the court's refusal to give the following instruction:

"The defendant requests the court to instruct the jury that if they find for the plaintiff as to any portion of the personal property involved in this law-suit, they should designate in their verdict the particular property as to which they find for the plaintiff"

—and in conjunction with this proposition argues that defendant was entitled to a verdict fixing a separate valuation on the property awarded by the jury to the plaintiff.

We believe the verdict which awarded to plaintiff the property "sued for" sufficiently described the property. since reference to the petition disclosed the property "sued for."

We do not agree that the separate valuation of the items found should have been inserted in the verdict. In the case of Hutchinson Gin Co. v. Latimer County Nat. Bank, 106 Okla. 160, 233 Pac. 438, the court held:

"The sixth and last contention is that the verdict is not in proper form, in that it did not set the value on each article of property involved in the action separately. The evidence discloses that the property involved here consisted of bales of cotton and cotton in the seed, which last was ginned by defendant. and that it was all sold at one and the same time, and therefore there was not a question of difference in the value and, as heretofore found in this opinion, that the presumption is that the cotton was still in the possession of the defendant, in our opinion. it was not necessary that the jury should set a separate value on each bale of cotton under the circumstances disclosed by the record here. This case is unlike a case where the separate articles are of different kinds and classes, and there does not appear to us any good reason founded, either in law or fact, to require the jury to return separate values on each bale of cotton."

Moreover, the defendant made no request for an instruction directing the jury to find the value of the property separately, and we do not believe that he can now complain. The Supreme Court of Kansas, in the case of Ward v. Masterson, 10 Kan. 77, said:

"It is further objected that the verdict does not assess the value of each steer separately, and assesses the value of the six at a larger sum than is claimed in the petition. The petition, after describing the ten steers, alleges their value to be forty-dollars each. The assessment of the verdict is three hundred dollars for six steers, or at the rate of fifty dollars each. As no amendment of the petition was made or asked, judgment should have been entered for only the amount alleged, forty dollars each, or $240 altogether, and to that extent the judgment must be modified. Our statute nowhere requires either petition, answer, or verdict to state the value of the articles in controversy separately. It simply provides that the affidavit for an order of delivery shall state such values separately as nearly as practicable. Civil Code, sec. 177. If a party desires a finding as to the value of any particular article, doubtless he could. obtain it by applying under the provisions of section 286 of the Code as amended in 1870 (Laws 1870, p. 173, sec. 7). But failing to apply under that section, he cannot complain if the jury returns the valuation in gross."

Under section 552, C. O. S. 1921:

"In all cases the jury shall render a general verdict. and the court may in any case at the request of the parties thereto, or either of them, in addition to the general verdict, direct the jury to find upon particular questions of fact, to be stated in writing by the party or parties requesting the same"

—the defendant could have requested a finding as to separate values. Failing to do so, he cannot now complain. Eoff et al. v. Alexander, 62 Okla. 12, 161 Pac. 802.

Furthermore, the defendant does not establish prejudice resulting from the failure to fix separate values in the verdict. The giving of the redelivery bond admits the possession of the property sued for. Harry Boyce v. Augusta Camp, etc., 14 Okla. 642, 78 Pac. 322. The verdict and judgment are for the return of the property, which the defendant admits he has. The question of the value fixed in the verdict does not arise until there is a failure. through inability, to restore the property. There is nothing

in the record before us to indicate that any part of the property is not susceptible of restoration. The redelivery bond is conditioned for the return of the property and the payment of damages for failure to do so.

We believe that because of the absence of a showing in this record that any portion of the property cannot be restored, the question of value is not before us. That is a matter for the plaintiff to consider in an action on the redelivery bond, if all of the property be not restored. Leeper, Graves & Co. v. First Nat. Bank of Hobart, 26 Okla. 707, 110 Pac. 655.

The contentions of the defendant that the court erred in overruling the motion for a judgment notwithstanding the verdict; that the judgment does not conform to the verdict, and that the court erred in overruling the motion for a new trial, have all been disposed of by the conclusions we have reached hereinbefore.

Finding no prejudicial error in the record, we affirm the judgment.

BENNETT, TEEHEE, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.